# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHANE CRAWFORD,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>KEITH YORDY,<br><br>　　　　　　Respondent. | Case No. 1:16-cv-00320-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is an Amended Petition for Writ of Habeas Corpus filed by Idaho state prisoner Shane Crawford ("Petitioner" or "Crawford"), challenging his state court conviction for lewd conduct. *See* Dkt. 5. The Amended Petition is now fully briefed and ripe for adjudication. Dkt. 36, 41, 42. The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. *See* Dkt. 18, 33; Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief.

## BACKGROUND

In a criminal action in the Fourth Judicial District Court in Ada County, Idaho, Petitioner was charged with one count of lewd conduct with a minor under the age of

sixteen (Count I), against Victim I,[1] by way of manual-genital contact, *see* Idaho Code §§ 18-1508[2]; and one count of lewd conduct (Count II) and two counts of sexual abuse (Counts III and IV) of a minor under the age of sixteen, against Victim II, by manual-genital contact not arising to lewd conduct. *See* Idaho Code § 18-1506.[3] Petitioner was convicted on Counts I and II. However, Count I, the conviction related to Victim I, was reversed on appeal, and the state did not retry Petitioner on that count. In this habeas corpus action, Petitioner challenges his conviction on Count II (lewd conduct with a minor under sixteen) against Victim II.

Count II involved what the parties and the state courts referred to as "the kitchen incident." The Idaho Supreme Court later described Victim II's testimony with respect to the kitchen incident as follows:

> Victim II testified that when she was in eighth grade, she and Crawford were in the kitchen of the house in which they were living. She said that Crawford "was offering me an alcoholic drink and I had told him that I didn't want any alcohol. And I don't know how the conversation got brought up, but he asked me what a clit was and I told him that I didn't know what that was." She testified that Crawford told her that he was going to show her, and despite her backing away, Crawford touched her with his hands at that point, going up from her pajama shorts. When asked where he touched, she replied "Outside of my vaginal area." The prosecutor then

---

[1] The Court follows the Idaho Supreme Court's designation of these victims as Victim I and Victim II. In this action, only the crime against Victim II is at issue.

[2] Section 18-1508 sets forth various ways that a "lewd or lascivious act" can be committed: "genital-genital contact, oral-genital contact, anal-genital contact, oral-anal contact, manual-anal contact, or manual-genital contact."

[3] Section 18-1506 defines sexual abuse, in relevant part, as "[c]aus[ing] or hav[ing] sexual contact with [a] minor child, not amounting to lewd conduct." *See id.* § (1)(b).

asked if "he [was] going down, like down from your shorts or was he going up?" Victim II responded "Up."

*Crawford v. State*, 377 P.3d 400, 403–04 (Idaho 2016).

The jury found Petitioner guilty of Counts I and II—the lewd conduct charges against Victims I and II—but acquitted him of Counts III and IV. *State's Lodging A-1* at 121-24. Petitioner appealed, arguing, in pertinent part, that the trial court should have answered a jury question regarding the definition of manual-genital contact by "clarifying that the breast area is not a genital for the purpose of finding [Petitioner] guilty of lewd conduct." *State's Lodging B-6* at 4.

The Idaho Court of Appeals affirmed the conviction on Count II but reversed the conviction on Count I. The court concluded that the trial court should have given additional instructions after the jury expressed confusion with respect to the definition of manual-genital contact, as it applied to the breast area. Specifically, the appellate court held: "By answering the jury's question regarding whether touching of the breast area constitutes manual-genital contact with the instruction to 're-read all the instructions' and by not informing the jury [that touching the breast does not, as a matter of law, amount to manual-genital contact], the district court erred." *State's Lodging B-6* at 5. The court of appeals held that the error was harmless as to Count II—because there was no testimony about touching the victim's breasts during the kitchen incident—but not as to Count I. *Id.* at 5-6. The Idaho Supreme Court denied review. *State's Lodging B-9*.

The State elected not to retry Petitioner on Count I. Thus, Petitioner's conviction on Count II—lewd conduct against Victim II—was Petitioner's only remaining conviction.

Petitioner filed a state post-conviction petition, seeking relief from that conviction and asserting claims of ineffective assistance of trial and appellate counsel. Petitioner argued that "(a) trial counsel failed to move for an Idaho Criminal Rule 29(a) judgment of acquittal as to Count II because there was insufficient evidence to show that Crawford touched Victim II's genitalia; (b) during jury deliberations, trial counsel failed to request the district court instruct the jury that manual-genital contact requires touching the vaginal area, and similarly failed to request that the district court define the term 'genital' for the jury; and (c) appellate counsel failed to raise a claim of insufficient evidence to sustain a conviction." *Crawford*, 377 P.3d at 405; *see also State's Lodging C-1* at 4-14. The state district court summarily dismissed the petition, and a divided panel of the Idaho Court of Appeals affirmed. *State's Lodging C-1* at 323-36; *State's Lodging* D-4.

The Idaho Supreme Court granted review and affirmed the dismissal of the post-conviction petition. (*State's Lodging D-7*; *D-10*). The Idaho Supreme Court held that the trial court was not required to further instruct the jury, either by defining the term "genital" or by stating that lewd conduct required touching of the "vaginal area." *Crawford*, 377 P.3d at 409-12. The court also concluded that sufficient evidence supported the conviction on Count II and that a motion for judgment of acquittal would have been denied. *Id.* at 406-09, 411-12. Therefore, Petitioner had not established ineffective assistance of either trial or direct appeal counsel.

In the instant Amended Petition, Petitioner asserts the same claims that he raised in his state post-conviction proceedings. Claim 1 asserts ineffective assistance of trial counsel based on (a) counsel's failure "to make an Idaho Criminal Rule 29 motion for a judgment of acquittal after trial," and (b) counsel's alleged failure to object to the trial court's response to the jury's question regarding the definition of manual-genital contact. Dkt. 5 at 6. Claim 2 asserts ineffective assistance of appellate counsel based on counsel's failure to argue, on direct appeal, that Petitioner's conviction was not supported by sufficient evidence. *Id*. at 7.

## HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted when a federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief may be granted only where the state court's adjudication of the petitioner's claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Deciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination

of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (internal quotation marks and citations omitted).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v.*

*Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that

fair-minded jurists could disagree on the correctness of the state court's decision, then

relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102

(2011). The Supreme Court has emphasized that "even a strong case for relief does not

mean the state court's contrary conclusion was unreasonable." *Id*. To be entitled to

habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling

on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Id.* at 103.

Though the source of clearly established federal law must come only from the

holdings of the United States Supreme Court, circuit precedent may be persuasive

authority for determining whether a state court decision is an unreasonable application of

Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000).

However, circuit law may not be used "to refine or sharpen a general principle of

Supreme Court jurisprudence into a specific legal rule that th[e] Court has not

announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state

court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180

(2011). Therefore, evidence that was not presented to the state court cannot be introduced

on federal habeas review if a claim was adjudicated on the merits in state court and if the

underlying factual determinations of the state court were reasonable. *See Murray v.

Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014); ("After *Pinholster*, a federal habeas

court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2).”); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (“If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits ... was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court.”).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were “unreasonable ... in light of the evidence presented in the State court proceeding.” A “state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.” *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (“The question under AEDPA is not whether a federal court believes the state court’s determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.”). State court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)—either by showing that the state court’s adjudication of the claim was contrary to, or an unreasonable application of Supreme Court precedent or by establishing that the state court’s factual findings were unreasonable—then the federal habeas court must review the petitioner’s claim de novo, meaning without deference to the state court’s decision. *Hurles*, 752 F.3d at 778. De novo

review is also required where the state appellate court did not decide a properly-asserted claim or where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Even under de novo review, however, if the factual findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167-68. Conversely, if a state court factual determination is unreasonable, the federal court is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d at 1000.

## DISCUSSION

1. **Clearly-Established Law Governing Claims of Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard for ineffective assistance of counsel ("IAC") claims was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors prejudiced the defendant by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A petitioner must establish both deficient performance and prejudice to prove an IAC claim. *Id.* at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one prong is not satisfied and would compel denial of the IAC claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the reasonableness of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of which motions to file, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91. That is, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Further, counsel is not deficient in an area where an investigation would not have been fruitful for the defense.

The Ninth Circuit has provided some insight into the *Strickland* standard when evaluating an attorney's "strategy calls." These cases are instructive in the Court's assessment of whether the state court reasonably applied *Strickland*. *See Duhaime*, 200 F.3d at 600. First, tactical decisions do not constitute IAC simply because, in retrospect, better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Second, a mere difference of opinion as to tactics does not render

counsel's assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981). Third, "counsel's investigation must determine trial strategy, not the other way around." *Weeden v. Johnson*, 854 F.3d 1063, 1070 (9th Cir. 2017); *see also id.* ("Weeden's counsel could not have reasonably concluded that obtaining a psychological examination would conflict with his trial strategy without first knowing what such an examination would reveal.").

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112.

The foregoing standard, giving deference to counsel's decision-making, is the de novo standard of review. Another layer of deference—to the state court decision—is required under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S. Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. That is, when evaluating an IAC claim under § 2254(d), this Court's review of that claim must be "doubly deferential." *Pinholster*, 563 U.S. at 190 (internal quotation marks omitted).

These principles from *Strickland* apply equally to claims of ineffective assistance of trial or direct appeal counsel. Effective legal assistance does *not* mean that appellate counsel must appeal every question of law or every nonfrivolous issue requested by a criminal defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "Nothing in the Constitution" requires "judges to second-guess reasonable professional judgments and

impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." *Id*. at 754. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52.

To show prejudice with respect to direct appeal counsel, a petitioner must show that his appellate attorney failed to raise an issue obvious from the trial record that probably would have resulted in reversal. *Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989). If a petitioner does not show that an attorney's act or omission would probably have resulted in reversal, then he cannot satisfy either prong of *Strickland*: appellate counsel did not perform deficiently for failing to raise such an issue, and petitioner suffered no prejudice as a result of it not having been raised. *Id.* at 1435.

## 2. Relevant Facts

The prosecution limited Count II to the kitchen incident. Immediately before testifying about that particular incident, Victim II testified about how, on numerous occasions, Petitioner would touch her in a way that made her uncomfortable. This testimony did not pinpoint a specific time or a specific incident:

> Q.    When did you become aware—well, let's step back. When was the first time—how old were you when his touching became uncomfortable?
>
> A.    13.
>
> Q.    What was it about his touching that made you uncomfortable?
>
> A.    Like where?

Q.      Uh-huh.

A.      He would touch me on my upper thigh and it started getting really uncomfortable.

Q.      Okay. And so were you 13 just about—where you were starting to develop and—

A.      Yes.

Q.      And before you turned 13 and were developing, would he touch you there?

A.      Yes.

Q.      But this time it became uncomfortable. What was the difference? Why did it become uncomfortable?

A.      Because certain places were okay and other places weren't and the places that he was touching me I knew were not okay.

Q.      Okay. So you say that he was touching you on your thigh. Was it like on your lower thigh or what was it close to?

A.      Close to my private area.

Q.      Okay. So was that part of it that was uncomfortable?

A.      Yeah.

...

Q.      ... Besides the touching when he was rubbing on your leg, was he getting close to where your underwear was at?

A.      Yes.

Q.      In fact, was he *up there to your privates*?

A.      *Yes*.

*State's Lodging A-2* at 238-42 (emphasis added).

The prosecutor then asked Victim II about the kitchen incident specifically:

Q.      And so do you remember a time when you were in the kitchen with [Petitioner]?

A.      Yes.

Q.      Can you kind of tell the jurors a little bit about when that was.

...

A.      I was in 8th grade ....

Q.      Okay. So what were you doing in the kitchen?

A.      He was offering me an alcoholic drink and I had told him that I didn't want any alcohol. And I don't know how the conversation got brought up, but he asked me what a clit was and I told him that I didn't know what that was.

Q.      At that time did you know what that was?

A.      No.

Q.      What were you wearing when you were in the kitchen?

A.      I was wearing my P.J. shorts and a tank top.

Q.      Okay. Did you have a bra on?

A.      I don't remember.

Q.      Okay. And so did [Petitioner] normally talk to you like that, like, do you know what a clit is?

A.      No.

Q.      So what did you tell him?

A.      That I didn't know what a clit was.

Q.      And then what did he do?

A.      He said, "Well, let me show you," and then went to go show me, and I like backed away when he was going to show me.

> Q.     Okay. *So did his hands touch you?*
>
> A.     *Yeah.*
>
> Q.     *Where did they touch you?*
>
> A.     *Outside of my vaginal area.*
>
> Q.     Okay. So was he going down, like down from your shorts or was he going up?
>
> A.     Up.
>
> Q.     Did you—did you make any comments to him?
>
> A.     I just told him that I was going to bed and I went upstairs and just went straight to bed.

*Id.* at 242-43.

After the close of evidence, defense counsel did not move for a judgment of acquittal under Idaho Criminal Rule 29(a).

The trial court instructed the jury that, to find Petitioner guilty of lewd conduct in Count II, the jury would have to find that Petitioner "committed an act of manual-genital contact upon or with the body" of Victim II and that Petitioner committed that act "with the specific intent to arouse, appeal to, or gratify the lust of passions or sexual desires of the defendant, of such child, or of some other person." *State's Lodging A-1* at 141. The instruction did not define "manual-genital contact." The jury was also instructed that consent was not a defense and that, "[t]o constitute lewd and lascivious conduct, it is not necessary that bare skin be touched. The touching may be through the clothing." *Id*. at 142-43.

During deliberations, the jury sent a question to the judge involving the definition of "manual-genital contact." Question No. 3 asked, "In order to have committed manual-genital contact, does it require touching the vaginal area? Does touching of the breast area constitute manual-genital contact?" *State's Lodging A-2* at 544. Before seeking input from counsel, the trial court stated, "And my answer is to reread the instructions." *Id.*

Defense counsel then sought to clarify the question and to set forth Petitioner's position:

> [Defense]:     Now, the questions were in order to have lewd—
>
> [Court]:       Committed manual-genital contact, does it require touching the vaginal area? Does touching the breast area constitute manual-genital contact?
>
> [Defense]:     I think the answer is no.
>
> [Court]:       No, the answer is reread the instructions. I'm not going to define for them manual-genital. Cathy—Miss Guzman.
>
> [Prosecutor]: ... I think the court is correct because I think they have a two-part question, does it include the vaginal area and does it the include [sic] breast. So, I mean, how can you say no?
>
> [Court]:       Yeah, you can't.
>
> [Prosecutor]: You have to reread the instructions. I think the instructions are clear.
>
> [Court]:       Well, if the jury—I do not feel comfortable defining, and in fact, there's case law that says not only should you default to the standard instructions, but that while—while it may seem—it's tempting to want to define every single word, that it's inappropriate for the court to do so and that the jurors have to apply their understanding—their

common ordinary understanding to it. And, therefore, I'm just
going to tell them to reread the instructions.

*Id*. at 544-45. The jury was so instructed and found Petitioner guilty of Count II.

**3.      Claim 1(b): Ineffective Assistance of Trial Counsel Based on Failure to
          Object to Trial Court's Decision Not to Further Define "Manual-Genital
          Contact," or to Instruct that Manual-Genital Contact Required Touching of
          the "Vaginal Area," in Response to Jury Question No. 3**

   *A.      State Court Decision*

Claim 1(b) asserts that trial counsel rendered ineffective assistance by failing to

request an instruction that "manual-genital" means "manual-vaginal area" or to object to

the trial court's decision not to further instruct the jury as to the meaning of that phrase.

The Idaho Supreme Court rejected this claim, determining that the district court did not

commit error in responding to the jury's question because "the instructions provided to

the jury in this case were correct and adequate" and were in accordance with the Idaho

Supreme Court's recommended instructions. *Crawford*, 377 P.3d at 410 and n.5.

The Idaho Supreme Court held that the instruction Petitioner claimed counsel

should have requested—that manual-genital means manual-vaginal area—is an

inaccurate statement of Idaho law:

> *"[M]anual-genital" contact* (as the statute requires) *is not
> synonymous with manual-vaginal-area contact*. To instruct
> the jury otherwise would have been to substitute the district
> court's opinion about what language should be in the statute
> for the actual language chosen by the legislature which is
> presumed to be correct.

*Id.*, 377 P.3d at 410-11 (emphasis added) (footnote omitted). The court also stated that

Petitioner had made "no argument that the term 'genital' is not a generally understood

term." *Id.* at 411.

Finally, the Idaho Supreme Court held that "whether to tell the jury that 'manual-genital contact' meant touching the 'vaginal area' or to define the term 'genital' was squarely within the district court's discretion and the refusal to do so was not an abuse of that discretion."[4] *Id.* Because "the jury instructions as a whole did not confuse or mislead the jury or prejudice Crawford sufficiently to warrant reversal," trial counsel's alleged failure to object to the trial court's response to the jury's question "was not deficient performance, nor did it prejudice" Petitioner. *Id.*

### B.      *Petitioner Is Not Entitled to Relief on Claim 1(b)*

As explained above, Petitioner asserts in Claim 1(b) that trial counsel rendered ineffective assistance when, in response to the jury's question, counsel (1) failed to object to the trial court's decision not to further define the statutory term "manual-genital" and (2) did not request an instruction that "manual-genital contact" is defined as "manual-

---

[4] Petitioner contends that the Idaho Court of Appeals and the Idaho Supreme Court came to opposite conclusions as to whether the trial court was required to further define "manual-genital contact" as meaning "manual-vaginal area contact." *Dkt. 41* at 8 ("[T]he Supreme Court concluded that the term "genital" was within the general understanding of the jury…despite the Court of Appeals' previous ruling on direct appeal that the same jury question had showed a defect in the instructions that necessitated clarification by the trial court."). Petitioner is incorrect.

The Idaho Court of Appeals held only that the trial court should have instructed the jury as to "manual-genital contact" by stating that touching the *breast area* is not manual-genital contact. It did not address whether the trial court was also required to instruct the jury that "manual-genital" means "manual-vaginal-area." The court of appeals held that the answer to the *second* part of the jury's question was "no," but that court did not express an opinion as to the *first* part of the jury's question.

Addressing that first part of the jury's question, the Idaho Supreme Court held that the trial court was not required to instruct the jury that manual-genital contact required touching of the "vaginal area." In fact, the Idaho Supreme Court held that such an instruction would be an inaccurate description of the language of the statute, because the vagina is only one part of the female genitalia, and touching *any* part of a minor's genitalia constitutes lewd conduct. Thus, Petitioner's argument on this point is without merit.

vaginal area contact."

The Court concludes that the Idaho Supreme Court's rejection of Claim 1(b) was reasonable under AEDPA. *See* 18 U.S.C. § 2254(d).

The Idaho Supreme Court held that the word "genital," as used in the lewd conduct statute, is not limited to the vagina or the vaginal area, and that, therefore, saying the touching was "outside" the vaginal area does not mean that the touching was "outside" the genitalia. That is an interpretation of Idaho law that this Court cannot second-guess; federal habeas corpus relief is "unavailable for alleged errors in the interpretation or application of state law." *Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1994) (internal quotation marks omitted); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

The state supreme court's interpretation of the term "genital"—that the term is not limited to the vaginal area—is also correct as a matter of simple anatomy. The female genitalia certainly includes the vagina, which is an internal organ and a part of the female internal genitalia. But it is common knowledge that the female genitalia also includes the *external* genitalia. As recognized by the state court, "Female external genitalia consist of the clitoris, the mons pubis, the labia minora and labia majora, and the vestibule of the vagina. Female internal genitalia are commonly understood to refer to the internal sex organs such as the vagina, cervix, and uterus." *Crawford*, 377 P.3d at 409 n.4 (internal citation omitted). Therefore, defining "genital" as "vaginal area" is underinclusive.

Moreover, even if the term "vaginal area" could be construed to mean only the external genitalia immediately adjacent to the vaginal opening—the labia—or even the mons pubis, under no stretch of the imagination could "vaginal area" be construed to include the clitoris, which is undisputedly part of the female external genitalia. Thus, to say that the statutory term "genital" is limited only to a female's "vaginal area" is inconsistent with the English language, with science, and with human experience.

For the reasons set forth above, Petitioner's trial counsel did not perform deficiently by failing to request that the trial court instruct the jury that "manual-genital contact" means "manual-vaginal area contact," nor was Petitioner prejudiced by the failure to so request. Such an instruction would have been incorrect as a matter of fact and law. Petitioner has also failed to show that any other definition of "manual-genital contact" was required or that the failure to offer one constituted ineffective assistance of trial counsel.[5] The Idaho Supreme Court's decision on Claim 1(b) was neither an unreasonable application of clearly-established federal law, nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Therefore, Claim 1(b) will be denied.

---

[5] At the end of his brief, Petitioner states that the trial court should have defined the term "genital" to "include[] 'the organs of the reproductive system; especially: the external genital organs.'" *Dkt. 41* at 19 (internal quotation marks omitted). But Petitioner's allegation that the jury was confused because of the lack of that specific instruction is insufficient to show that Petitioner suffered prejudiced as a result of trial counsel's failure to request it. And again, the instruction was unnecessary, because in the English language and in human experience, the female body surrounding the genitalia is not considered the genitalia. For example, nowhere is the thigh ever defined as "genitalia," even though it surrounds the genitalia. Petitioner has not shown that he suffered prejudice as a result of trial counsel's failure to request a jury instruction that defined "genital."

4. **Claims 1(a) and 2: Ineffective Assistance of Trial Counsel for Failing to Move for Judgment of Acquittal, and Ineffective Assistance of Appellate Counsel for Failing to Argue Insufficiency of the Evidence**

Because Claim 1(a) and Claim 2 are related, in that they both rely on the premise that Petitioner's conviction on Count II was not supported by sufficient evidence, the Court will address them together.

### A. *State Court Decision*

The standard that Idaho courts apply in reviewing a Rule 29 motion for judgment of acquittal is similar to the standard for claims of insufficient evidence under the Constitution. *State v. Taylor*, 335 P.3d 31, 34 (Idaho 2014) ("Under I.C.R. 29, the district court may set aside a jury verdict and enter judgment of acquittal if the evidence is insufficient to sustain a conviction.") (internal quotation marks omitted); *State v. Carlson*, 3 P.3d 67, 73 (Idaho Ct. App. 2000) (stating that a defendant's Rule 29 motion "challenged the sufficiency of the state's evidence"). In the context of a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Addressing Petitioner's claim of ineffective assistance of trial counsel for failing to move for a judgment of acquittal, the Idaho Supreme Court first denied the claim because Petitioner had "not presented any argument sufficient to establish that counsel's failure to bring an I.C.R. 29 motion was anything other than a strategic or tactical

decision."[6] *Crawford*, 377 P.3d at 407. The court noted two possibilities for counsel's failure to file the motion:

> Perhaps [Petitioner's] counsel considered it and concluded that such a motion would be unsuccessful and a waste of time that could distract the jury with further sequestration while the motion was litigated; perhaps counsel was unprepared and simply neglected to make the motion. It was Crawford's burden to show the latter, and in the absence of such a showing, this Court presumes the former: that the decision was one driven by tactical or strategic decision making.

*Id*. at 407 (footnote omitted). Because counsel could have reasonably decided not to file a Rule 29 motion, and because there was no evidence that counsel's failure to file the motion was based on "inadequate preparation, ignorance of the relevant law, or any other shortcoming capable of objective evaluation," the Idaho Supreme Court held that counsel did not perform deficiently. *Id.*

Despite believing that it was unnecessary to proceed to the prejudice inquiry, the Idaho Supreme Court went on to hold that sufficient evidence supported Petitioner's conviction on Count II, and that, therefore, a Rule 29 motion would have been denied. Accordingly, Petitioner suffered no prejudice from trial counsel's failure to file such a motion. *Crawford*, 377 P.3d at 407-09.

---

[6] Read in isolation, this sentence appears to indicate that because counsel's decision not to file the motion was strategic, Petitioner could not prevail *even if* that strategic decision was unreasonable. Such a holding would be contrary to *Strickland*, which allows relief if counsel's objectively unreasonable strategic decision resulted in prejudice. 466 U.S. at 690-91; *id*. at 690 (describing counsel's strategic decisions, based on thorough investigation, as "*virtually* unchallengeable," not completely unchallengeable). However, because the Idaho Supreme Court quoted the relevant language from *Strickland* in the very next paragraph of its decision, and because it went on to note that Petitioner had not established "inadequate preparation, ignorance, or any other shortcoming capable of objective evaluation," it is likely that the state court simply made a typographical error in omitting the word "reasonable" before the phrase "strategic or tactical decision."

The Idaho Supreme Court noted that, in reviewing a Rule 29 motion, a court must consider the evidence in the light most favorable to the state and that "the only inquiry…is whether there is substantial evidence upon which a reasonable jury could have found that the State met its burden of proving the essential elements of the charged crimes beyond a reasonable doubt." *Id*. at 408 (internal quotation marks omitted). The court held that sufficient evidence supported Petitioner's conviction in part because, immediately before testifying about the kitchen incident, Victim II testified that Petitioner touched her "up there to [her] privates." *Id*. The court acknowledged that this testimony was not expressly tied to the kitchen incident but held that the jury could have reasonably concluded that the two "pieces of testimony were related." *Id.*

The state court also relied on the Victim II's testimony that Petitioner touched her "outside of [her] vaginal area," holding that the jury could reasonably have interpreted that testimony as Petitioner's "having touched her external genitalia near her internal genitalia, whether inside or outside her clothing." *Id*. at 409. Because that testimony was ambiguous and subject to two reasonable interpretations—one meaning that Petitioner did not touch the victim's genitalia, and one meaning that he did—there was sufficient evidence to support the conviction for lewd conduct. Therefore, a Rule 29 motion "would not likely have succeeded[,] and the failure to raise such a motion was not ineffective assistance of counsel":

> When the "outside of [her] vaginal area" evidence is considered alongside the "up there to [her] privates" evidence, both in the light most favorable to the State, a reasonable jury could have concluded that Crawford engaged in manual-genital contact with Victim II.

*Id*. (alteration in original).

The court denied Petitioner's appellate counsel ineffectiveness claim for the same reason—because an insufficiency-of-the-evidence argument "would have likely failed on appeal," Petitioner had not shown prejudice from counsel's failure to make that argument on appeal. *Id*. at 412.

Victim II's ambiguous testimony led the Idaho Supreme Court to "caution prosecutors about the need to create an adequate record for appellate review":

> In this case, we understand that the limited testimony as to the precise location of the contact may well have been the product of prosecutorial sensitivity to the fact that Victim II was a sixteen year-old child who had testified that she was nervous about being in the courtroom, and that it was difficult to be there. However, a prosecutor should take care to avoid solicitude for the feelings of a vulnerable witness resulting in an insufficient record. Certainly, for appellate purposes, when an alleged victim of lewd conduct does not testify in relatively explicit clinical terms, e.g., vagina, it would assist reviewing courts if the record contained an exhibit or exhibits reflecting the location of alleged sexual contact.

*Id*.

### B. Petitioner Is Not Entitled to Relief on Claim 1(a) or Claim 2

Petitioner has not shown that trial or appellate counsel performed deficiently or that he suffered prejudice. As set forth above, *Strickland* applies to both trial and appellate attorney ineffectiveness claims.

As to the deficient performance prong of *Strickland*, the double deference that applies when reviewing ineffective assistance claims in habeas proceedings leaves no room for this Court to second-guess the tactical decisions of Petitioner's counsel with the

benefit of hindsight. *Pinholster*, 131 S. Ct. at 1403; *Strickland*, 466 U.S. at 689. Petitioner points to his verified post-conviction petition in the state district court, which stated that his trial counsel's decision not to make a Rule 29 motion was "not [a] strategic or tactical decision[]." *State's Lodging C-1* at 8. Petitioner contends that, because the state's answer in the state court proceedings did not specifically deny this statement, there was evidence that the decision was not strategic. Petitioner claims, therefore, that the Idaho Supreme Court's statement that there was insufficient argument or evidence as to that issue was an unreasonable factual finding.

However, the state court was not required to accept Petitioner's conclusory allegation that counsel's decision was not strategic, unsupported as the allegation was by any specific facts. In *Ridgley v. State*, 227 P.3d 925 (Idaho 2010), the Idaho Supreme Court clarified that "summary dismissal may be appropriate even where the State does not controvert the applicant's evidence because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law.") (quotation omitted). *Id*. at 929. For example, in Ridgley's affidavit, he "asserted that if post-conviction relief were granted, he would not again plead guilty but would insist on going to trial because he is innocent." *Id*. at 931. The Idaho Supreme Court rejected the argument that the bare assertion was sufficient to withstand summary dismissal. "Nowhere in his petition or his affidavit does Ridgley attempt to draw a causal connection between the alleged deficiencies of his attorney's performance and his decision to plead guilty," reasoned the Court. *Id*.

Similarly, here, Petitioner's bare allegation was insufficient. A search of the entire post-conviction record shows that it contains nothing to indicate that the failure to file the motion was *not* tactical. Thus, the state court's finding that the decision was tactical was not unreasonable under § 2254(d)(2).

Additionally, Petitioner has not established that his trial counsel's tactical decision not to file a Rule 29 motion—or his appellate counsel's decision not to raise a sufficiency-of-the-evidence argument—was unreasonable. As the Idaho Supreme Court stated, trial counsel could have reasonably predicted that the motion would not have been granted and chose not to burden the court with it or to subject the jurors to a longer sequestration. And appellate counsel reasonably could have decided that raising Petitioner's other claims on direct appeal was a stronger argument than arguing insufficient evidence. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[I]t is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent" because, "'[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.") (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986). Therefore, Petitioner has not shown that trial counsel performed deficiently in failing to move for a judgment of acquittal—or that direct appeal counsel unreasonably omitted a sufficiency-of-the-evidence claim on appeal—and Idaho Supreme Court's decision on these points was not unreasonable under AEDPA.

In addition, because a Rule 29 motion would have been denied and because sufficient evidence supported the conviction, Petitioner has not established prejudice from the performance of either trial counsel or appellate counsel. Although it is a close question, this Court agrees with the Idaho Supreme Court that, based on Victim II's testimony, a reasonable juror could have concluded beyond a reasonable doubt that Petitioner engaged in manual-genital contact against Victim II.

Petitioner argues that the state court's finding that Victim's II's "up there to [her] privates" testimony could reasonably be interpreted as applying not only to the way Petitioner would touch Victim II generally, but also as applying specifically to the kitchen incident, is an unreasonable determination of the facts. Regardless of whether this Court, if reviewing the claim de novo, would have made that factual finding, it cannot conclude that the Idaho Supreme Court was objectively unreasonable in doing so. This testimony, when considered together with the testimony that Petitioner touched Victim II "outside of [her] vaginal area," constitutes sufficient evidence upon which a rational trier of fact could find Petitioner guilty.

Additionally, the Idaho Supreme Court's warning to prosecutors does not mean that Petitioner's claim of insufficient evidence should be victorious, only that prosecutors should attempt to clarify a victim's testimony during trial about exactly where he or she was touched. As noted above, when testimony is susceptible to two meanings, and one of those meanings supports the jury verdict, neither Rule 29 nor the federal habeas corpus statute requires ruling in favor of the defendant-petitioner. Where reasonable jurists can disagree, federal habeas corpus relief must be denied. *See Richter*, 562 U.S. at 101.

Because this is a fairly close case, it bears repeating the standard of law under which this Court is bound. A federal court cannot grant relief merely because it determines that the state court's decision was "incorrect or erroneous"—the state court's application of federal law must have been "objectively unreasonable" to warrant habeas relief. *Lockyer*, 538 U.S. at 75. If fairminded jurists could disagree on the correctness of the state court's decision, then relief is not permitted under § 2254(d)(1). *Richter*, 562 U.S. at 101. Thus, even if the Court disagreed with the decision of the Idaho Supreme Court, that would not be enough to support a grant of federal habeas corpus relief.

In concluding that Petitioner had not shown prejudice as to Claims 1(a) and 2, the Idaho Supreme Court did not unreasonably apply *Strickland*, nor did it base its decision on an unreasonable determination of the facts.

## CONCLUSION

The Idaho Supreme Court concluded that (1) Petitioner's trial counsel did not render ineffective assistance in failing to object to the trial court's refusal to define "manual-genital" or in failing to move for a judgment of acquittal, and (2) Petitioner's appellate counsel did not render ineffective assistance in failing to raise a sufficiency-of-the-evidence claim. These decisions were not based on an unreasonable determination of the facts, nor were they unreasonable applications of clearly-established United States Supreme Court precedent. See 28 U.S.C. § 2254(d). Therefore, the Petition must be denied.

# ORDER

**IT IS ORDERED:**

1.   The Amended Petition for Writ of Habeas Corpus (Dkt. 11) is DENIED, and this entire action is DISMISSED with prejudice.

2.   The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: May 3, 2019

David C. Nye
Chief U.S. District Court Judge